**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**BARRY BRYANT,**<br><br>           **Defendant.** | Case No. 23-cr-0008 (BAH) |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

For what appears to be the majority of his adult life, Mr. Bryant has dealt drugs and carried guns in our community.  He has worked a legitimate job for only seven months of his life.  During the remainder of his time, he has dealt marijuana, and furthered his drug dealing by carrying deadly weapons.  Mr. Bryant has already been convicted of serious offenses involving the possession of a firearm and distribution levels of narcotics.  This is the fourth time he has been found or observed with a firearm in the last three years.  And he has been on court-ordered supervision throughout that time.  He has a history of distributing narcotics, possessing firearms, and fleeing from law enforcement.  And his prior interactions with arrests, supervision, and incarceration have done nothing to stem his criminal activity.  Instead, he regularly posts videos of himself or others holding what appear to be loaded firearms, rapping about dealing drugs, and glorifying the deadly drug trade despite the damage it has caused our community.

Given Mr. Bryant's lengthy history of carrying firearms and dealing dangerous drugs in our community, the Government requests a sentence of seventy-eight months of incarceration, followed by three years of supervised release.

## BACKGROUND

### *The Instant Offense*

On July 14, 2022, officers with the Metropolitan Police Department (MPD) responded to 1131 K Street SE, Apt. 33, to execute a D.C. Superior Court search warrant. Mr. Bryant was known to frequent apartment 33 although he was not the leaseholder.

When MPD arrived at the apartment complex, Mr. Bryant was standing in the entryway to the building. Upon noticing MPD, Bryant fled inside. MPD knocked on apartment 33 and, after receiving no response, forced entry into the apartment. Mr. Bryant was standing in the living room area of the apartment when MPD entered. Additionally, several juveniles were present and detained on the balcony of the apartment. During a search of the apartment, officers found a Glock 29 10mm semi-automatic pistol in the living room under a sofa cushion. The firearm was loaded with one round in the chamber and fourteen rounds in a thirty-two round capacity magazine.



*Figures 1 and 2*





      Outside of the apartment, MPD officers found a white BMW which was registered to Mr. Bryant. Bryant had the keys to the vehicle on his person at the time he was arrested. A K9 officer alerted to the presence of narcotics in the vehicle and MPD searched the vehicle. Inside the vehicle, officers found a black bag containing 402 grams of a substance that field tested positive for THC (the active ingredient in marijuana), a satchel containing several clear plastic bags containing a total of 78 grams of a substance that field tested positive for THC, a digital scale, and a magazine containing 10mm ammunition. The vehicle's center console contained a firearm laser sight compatible with a Glock firearm.

      Based on the total quantity of marijuana (more than a pound), multiple small bags, and the manner in which the marijuana was packaged, the ammunition, the digital scale, and the history of

that neighborhood and apartment building, marijuana seized from Mr. Bryant were more consistent with distribution than with personal use.

Swabs were taken of the recovered firearm and from Mr. Bryant. Subsequent DNA analysis connected Mr. Bryant to the recovered firearm.

### *Bryant's April 11, 2023 Arrest*

On January 5, 2023, Mr. Bryant was indicted on one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1); one count of Unlawful Possession of a Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1); and one count of Unlawful Possession with Intent to Distribute a Mixture and Substance Containing a Detectable Amount of Marijuana, in violation of in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D). That same day, the Honorable G. Michael Harvey issued a warrant for Bryant's arrest. At the time, Bryant did not have a stable residence known to law enforcement. The Government sought multiple warrants to identify Bryant's location but did not successfully find him until he was arrested on April 11, 2023, in Prince George's County, Maryland.

That day, law enforcement observed Mr. Bryant operating a vehicle that had been reported stolen on March 24, 2023 during an armed carjacking. Bryant was the sole occupant of the vehicle. Officers stopped the car and found a black Glock 21 .45 caliber handgun with an extended magazine wedged between the driver seat and the center console.

*Figure 3*



The firearm was loaded with one round in the chamber and twenty rounds in a twenty-four-round magazine. Additionally, the firearm appeared to have been equipped with an apparent Glock conversion device which allows the firearm to fire automatically. Officers also found a black backpack in the front passenger seat of the vehicle, containing 418 grams of marijuana in three different packages, seventeen pre-packaged bags of marijuana, additional empty bags, a digital scale, and $1,891 in cash. Mr. Bryant was arrested and charged in Prince George's County based on the firearm and narcotics. Mr. Bryant was detained in Prince George's County pending trial on those charges. That case has since been dismissed and Mr. Bryant was released to face charges in the jurisdiction.

*The Pre-Sentence Investigation Report*

The Pre-Sentence Investigation Report (PSIR) in this matter summarizes Mr. Bryant's personal and criminal history. Mr. Bryant is thirty-four years old and was born and raised in Washington, D.C. PSIR at 2, ¶¶ 70, 72. Mr. Bryant grew up in high crime areas but stated that his parents met all of his needs and denied any instances of abuse or neglect. PSIR at ¶ 72. Mr. Bryant attended high school through the twelfth grade but did not graduate high school. PSIR at ¶ 90. Mr. Bryant has two children from two different relationships. PSIR at ¶ 74. Mr. Bryant was shot in 2019. PSIR at ¶ 80. Mr. Bryant has a history of drug and alcohol use and admitted to abusing pain killers and marijuana. PSIR at ¶¶ 85-87. Mr. Bryant reported that the only time he had ever been employed was for seven months in 2022. PSIR at ¶ 94.

*Mr. Bryant's Criminal History*

On February 1, 2013, Mr. Bryant was a passenger in a vehicle driving on Suitland Parkway. PSIR at ¶ 42. The vehicle was stopped for traffic violations. *Id.* Mr. Bryant was found to be in possession of fifty-six grams of marijuana in thirty-nine Ziplock bags. *Id.* Mr. Bryant pled guilty to Possession with Intent to Distribute Marijuana and was sentenced to sixty days' incarceration. *Id.*

On June 21, 2014, MPD officers observed Mr. Bryant engaged in hand-to-hand transactions consistent with the distribution of drugs. PSIR at ¶ 43. Officers approached and Mr. Bryant fled. *Id.* He was ultimately apprehended and found to be in possession of thirty-one Ziplock bags containing fifty-one grams of marijuana. *Id.* Mr. Bryant pled guilty. *Id.*

On July 18, 2018, MPD officers observed Mr. Bryant and another man on a live social media post depicting drugs and a firearm in a vehicle. PSIR at ¶ 44. Officers located Mr. Bryant and the vehicle. *Id.* Mr. Bryant attempted to leave the area. *Id.* In the vehicle, officers

6

recovered a loaded Glock 23, 983 grams of marijuana, and a bottle of promethazine. *Id.* Mr. Bryan pled guilty to Possession with Intent to Distribute Marijuana and was sentenced to a largely suspended sentence. *Id.*

On February 18, 2019, MPD officers responded to 1601 16th Street SE based on a report of a man sitting in a black Ford Bronco with a gun. PSIR at ¶ 41. Officers found a black Ford Bronco in the described location and attempted to stop the vehicle. *Id.* The vehicle—driven by Mr. Bryant—fled, striking a parked vehicle, before Mr. Bryant continued fleeing on foot. *Id.* He was apprehended. *Id.* Officers recovered a black pellet gun from the vehicle. *Id.* The vehicle was stolen. *Id.* The victim of the carjacking reported that Mr. Bryant pointed a gun at him and stated "what you gonna do now b[@#$%] n[@#$%@]." *Id.* Mr. Bryant pled guilty to Assault with a Dangerous Weapon, Fleeing Law Enforcement, and Attempted Unauthorized Use of a Vehicle. *Id.* He was initially sentenced to a probationary sentence, but his probation was revoked less than two months after sentencing. *Id.*

In addition to these convictions, Mr. Bryant has at least six additional arrests for offenses involving guns, drugs, or both.

## **ARGUMENT**

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007). The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives."

*Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
>    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
>       (i) issued by the Sentencing Commission . . .; and
>       (ii) that, . . . are in effect on the date the defendant is sentenced; . . .
>
> (5) any pertinent policy statement –
>    (A) issued by the Sentencing Commission . . . and
>    (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

But the Sentencing Guidelines are only "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). They "are not the only consideration." *Id.* A sentencing judge "should . . . consider all of the § 3553(a) factors," and "[i]n so doing, . . . may not presume that the Guidelines range is reasonable." *Id.* at 50. "[I]t is not error for a district court to enter sentencing variances based on factors already taken into account by the Advisory Guidelines, in cases in which the Guidelines do not fully account for those factors, or when a district court applies

broader § 3553(a) considerations in granting the variance." *United States v. Ransom*, 756 F.3d 770, 775 (D.C. Cir. 2014) (citation and internal quotation marks omitted). In doing so, "the district court can rely on hearsay as evidence for its findings." *United States v. Miller*, 35 F.4th 807, 818 (D.C. Cir. 2022). *See also United States v. Jones*, 744 F.3d 1362, 1368 (D.C. Cir. 2014) ("Clear precedent permits hearsay to be used in sentencing decisions."). And the sentencing court can consider conduct by a defendant that was not charged or even for which a defendant was acquitted. *See United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008) ("[L]ong-standing precedents of the Supreme Court and this Court establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proven by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction.").

## THE APPLICABLE SENTENCING GUIDELINES

The PSIR estimates Mr. Bryant's offense level to be 23 and his criminal history to be category IV, yielding a Guidelines imprisonment range of seventy to eighty-seven months' imprisonment. PSIR at ¶ 104. Additionally, the PSIR reflects a Guidelines range of one to three years of supervised release and a fine of $20,000 to $200,000. PSIR at ¶¶ 112, 127. The Government agrees with these calculations.

## THE GOVERNMENT'S SENTENCING RECOMMENDATION

The Government recommends that the Court sentence Mr. Bryant to seventy-eight months of incarceration followed by three years of supervised release. This sentence reflects the serious nature of this offense, the repetitive and dangerous history of Mr. Bryant's other criminal offenses and provides adequate deterrence to others in the community given the danger presented by the carrying of loaded firearms in connection with drug trafficking.

I.      **The Nature and Circumstances of Mr. Bryant's Offenses.**

The nature and circumstances of this offense warrant a significant term of incarceration. Mr. Bryant was engaged in drug trafficking while in possession of a loaded firearm. And the circumstances in which he was doing so are particularly egregious. Mr. Bryant was found in a apartment known for distributing drugs. Inside that apartment, in addition to the gun and drugs, were five juveniles aged between thirteen and fifteen. Mr. Bryant was not just distributing drugs while armed, he was doing so in front of and in the company of children.

The possessory nature of this offense does not mitigate its dangerousness. "Illegally possessing a fully loaded concealed firearm with easy, quick access in the front waistband of defendant's pants, while out in public, poses an inherent risk of danger to the community." *Blackson*, 2023 WL 1778194, at *7. This Court routinely finds that just one such gun poses a danger to the community. *See United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public). And this was not just one firearm: Mr. Bryant has been observed or arrested with four firearms over the last three years. The two handguns which were recovered were both loaded with a round in the chamber. *See United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020), *aff'd* (Nov. 5, 2020) (finding that a defendant should be detained pretrial in part because "the firearm recovered from the Defendant's person had a round already chambered, making the circumstances even more troubling.") And Mr. Bryant did not keep these firearms secured at home. He kept them readily available, in a stolen car or on his person.

Further, this Court has repeatedly recognized the dangerousness associated with carrying a firearm in connection with drug distribution. *See, e.g., United States v. Carr*, 2022 WL 13947798

10

(D.D.C.), 4 (slip copy) ( "[T]he combination of drug distribution *and* the illegal possession of (multiple) guns presents a serious danger to the community."); *United States v. Taylor*, 289 F. Supp. 3d 55, 71 (D.D.C. 2018) ("[A]lthough the mere fact that the defendant possessed a firearm does not constitute evidence of a danger to the community, possession of a firearm by a convicted felon who is allegedly engaged in illegal drug distribution is a different matter.") Mr. Bryant carried this firearm to further his distribution of illegal narcotics. This firearm was a threat to others who might try to steal from or to those who might not want to pay for his wares. Violence is inherent in drug trafficking. And the carrying of firearms by people like Mr. Bryant assures that such violence will be deadly.

Mr. Bryant's possession of a firearm while distributing drugs in front of children justifies a significant term of incarceration.

**II.     Mr. Bryant's History and Characteristics.**

This is not Mr. Bryant's first offense.  He has a lengthy and consistent criminal history. Mr. Bryant deals drugs, oftentimes armed.  Over the past fifteen years, Mr. Bryant has been arrested on ten occasions for possessing drugs with the intent to distribute them, possessing a firearm, or both.  His criminal history indicates that despite multiple arrests and convictions, he continues to distribute narcotics in our community, and carries guns when he does so.

Mr. Bryant's first serious arrest as an adult was fourteen years ago, in 2009, when he carjacked a child while armed with an imitation firearm.  He did not turn himself in calmly, he fled, first in a car, and then on foot, striking another vehicle as he did so.  While on supervision in that case, in 2013, he was charged with drug distribution.  He was in possession of thirty-nine Ziplock bags of marijuana.  Four months later, after serving his sentence in that case, in June 2014 he was charged a second time with drug distribution.  There, Bryant was observed, outside and in

11

public, dealing marijuana. He was arrested with thirty-one Ziplock bags of marijuana. A second arrest and conviction for drug distribution did nothing to dissuade Mr. Bryant. Two years later, he was arrested and charged with drug distribution. This time it was not just marijuana. Mr. Bryant was also in possession of a loaded firearm and promethazine.

Mr. Bryant was charged federally in this case in January 2023. And when law enforcement finally found him in April 2023, he was engaged in the same criminal conduct for which he was indicted and for which he had been previously arrested: dealing drugs with a loaded firearm. Mr. Bryant was found in a stolen vehicle, with a loaded machinegun, and 418 grams of marijuana in multiple different packages.

Notably absent from Mr. Bryant's personal history is the sort of trauma or lack of support that could explain why he chooses to continue distributing narcotics. Mr. Bryant enjoyed family support and attended school through the 12th grade. While he has been the victim of a shooting, this does not explain why he has decided to make a career out of narcotics distribution, a career in which he is far more likely to be the victim of violence again.

Mr. Bryant creates rap videos which he posts to YouTube under the moniker "Fat Yee." Mr. Bryant's hobby of producing rap videos repeatedly glorifies rather than criticizes his gun wielding and drug dealing lifestyle. As Fat Yee, Mr. Bryant has created and posted more than one dozen videos in which he raps about carrying firearms and dealing drugs. In these videos, Mr. Bryant and those around him appear to be holding firearms and his lyrics expressly reference the distribution of drugs.

*lil Glockk ft. Fat yee – Street Light Official Video*



*Fat Yee – Ducking Da Law Official Video*



<u>*Fat Yee – Round Me (Music Video)*</u>



These images from music videos are consistent with images recovered from Mr. Bryant's Instagram account.

*Selfie-style photo of firearm with extended magazines*     *Bryant rapping with gun in pocket*



In other words, his possession of firearms when he has been arrested and in music videos is not aberrational.

      Mr. Bryant's criminal history presents a clear pattern:   he distributes narcotics, many times while in possession of firearms.   And he has spent several years creating highly produced videos designed to glorify that lifestyle.   His criminal and personal history justify a significant term of incarceration.

### III.     The Need for the Sentence Imposed.

      The requested sentence is sufficient but no greater than necessary to meet the goals of sentencing. The sentence provides specific deterrence: it will keep our community safe from Mr. Bryant for a significant period of time. It provides general deterrence: it will signal to the community that the possession of illegal firearms in connection with the trafficking of drugs is a

deadly serious matter and hopefully deter others from doing so. And it provides an opportunity for Mr. Bryant to reflect on the serious and repetitive nature of his crimes.

Mr. Bryant has been dealing drugs in our community for at least eleven years. Despite that he has rarely faced any significant consequences. His prior sentences have been for relatively short periods of time despite his generally poor performance on supervision. Despite the opportunities and second chances he has been given, Mr. Bryant continues to deal drugs while armed with deadly weapons. Prior prison sentences, court supervision, the threat of rearrest have done nothing to deter him. He is now thirty-four. He no longer has the excuse of youth or impulsiveness. The requested sentence of seventy-eight months is a reasonable one that secures the goals of justice.

## **CONCLUSION**

For all the foregoing reasons, the Government respectfully requests that the Court impose a sentence of seventy-eight months of incarceration followed by three years of supervised release.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:    */s/ Cameron A. Tepfer*
Cameron A. Tepfer
N.Y. Attorney No. 5248208
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
202-258-3515
Cameron.Tepfer@usdoj.gov